Curia, per

Richardson, J.
To the brief report of the presiding Judge, it may be necessary to add the following statement: On the 13th January, 1836, the intestate, James McFie, acting as the agent of the plaintiff, Thomas Lyles, and having in store, for him, thirty-two bales of cotton, to be sent to Charleston, shipped the cotton, together with forty-six other bales of cotton, belonging to J. McLemore, on board the boat of Jesse Floyd, himself, the said Floyd, being the patroon of the boat, as well as owner. The whole of the cotton disappeared, under circumstances which justified the suspicion *that Floyed had fraudulently converted the whole cargo into his own purposes. But Floyd alleged that the boat and cargo were burnt, by misfortune, on Cooper river. After shipping the cotton, James McFie used the precaution to have the cotton fully insured in Charleston ; and, after the loss, a suit at law was brought upon the policy of insurance. But the suit failed, by reason of the alleged fraud of the patroon of the boat, being at no owner. (See Frazier & Co. vs. F. & M. Co., Cheves, 123.) James McFie departed this life, and Thos. Lyles then instituted this action to recover the value of his thirty-two bales of cotton ; and has recovered a verdict. The administrators appeal, and claim, first, a non-suit, upon the legal ground, that the action of assumpsit does not lie in such a case ; and secondly, a new trial, upon the allegation that the evidence of the case is insufficient to support the verdict. Upon the question, whether the action of assumpsit does lie, and which has been gravely and impressively controverted on the part of the administrators, I have been unable, apart from the importance of the case, and the peculiar misfortune attending the cotton, to feel the difficulties supposed by the counsel. A merchant having in store the cotton of divers persons, to ship, let it be admitted, at his own discretion, does so ship it, and, of his own accord, has the cotton insured. I can perceive, in such a transaction, nothing but a contract, which has been either expressly made between the parties, or is plainly implied, by the undertaking and conduct of the merchant. Doing the work implies the contract. If the cotton had arrived safe, and been taken by the owners out of the hands of the consignee in Charleston, I cannot question that McFie might have brought his action, either for customary commissions, or, upon a quantum meruit for such services.
Suppose, on the other hand, that McFie had disposed of the cotton in any other way, as to his own use, or that of a third party, or sold or injured it. It is plain, that assumpsit upon an express or implied contract, would have been a proper form of action against him. It seems plain, then, to my understanding, that we are to look upon Mr. McFie, either as a professional merchant, factor or broker, acting in his calling, for the usual recompense, in money. In other words, as a bailee, for the hire of his services ; which species of bailment warrants reasonable skill and diligence. In either character* his own acts indicate a contract, express or implied, with the owners of the cotton. And assumpsit is a proper and legal form of action, in all such cases. “ Every person,” (says Leigh, p. 2,) “who undertakes any duty, trust, office, or employment, impliedly contracts with those who entrust or employ him, to perform his undertaking with skill, diligence, and integrity ; and the employer may maintain assumpsit for any injury which he has sustained, through the absence of any of those qualities.” See also, 1 H. Blk. 158; *16 8 East, 348; 3 Bl. Com. 163; B. N. P. 73; 2 Ch. 117; 1 Selw. 431. These authorities are, assuredly, conclusive, and leave no doubt, that assumpsit is the proper form of action in the case before the Court. From the same authorities, it is still more obvious, that the person employed is bound to perform his undertaking, with skill, diligence, and integrity. But let me add one more authority, to bring the general principle to the very case of McFie, as a merchant to forward goods for his principal. Chancellor Kent says, (vol 2, p. 501,) “ Justice Story divides the head of “ Locatio,” into “ Locatio faciendi opens,” (hire of labor and services,) and, “Locatio custodial,” &c. He includes under the last head, «fee., “warehousemen and wharfingers. And to these maybe added a class of bailees, known in this country by the term forwarding-men, or merchants.” “They are all responsible for want of good faith, of reasonable care, and ordinary diligence.” This rule of law brings us to the consideration of the second head of the appeal, which involves the question, does the evidence justify the conclusion, that McFie failed in diligence or care ?
Tradewell and JDeSaussure, for the motion. Black and Gregg, contra.
Upon the motion for a new trial, as far as it depends upon the evidence, there is room for a difference of opinion. An impartial observer might well hesitate on which side to lay the burthen of so unlooked for a misfortune, as the loss of the whole cargo. Both parties appear morally blameless. But the cotton has been lost, to one, or both of them; and although, in all probability, the loss was owing to the misconduct of Floyd alone, yet the Court has to decide whether it shall fall on the plaintiff or the defendants, leaving the unfortunate party to look eventually, for redress, to Floyd. This Court does not adjudicate upon the evidence of the case, although it frequently orders a re-consideration by the jury. It is certain that McFie did, in fact, employ an unfortunate, unsafe,* and very suspicious carrier ; which, under the whole evidence adduced, gave ground for the conclusion, that he acted without reasonable skill and vigilance, if not with positive negligence; which would be enough to render him liable. Story Agency, 183; Livermore, 339; Sto. Bail. 4; Kent, and the cases there quoted.
The reply to this view was, that McFie insured the cotton, of his own accord. But sneh a precaution could not change the character of the original negligence. In referance to it, the insurance could only be intended for a remedy against consequences that might follow. In fact, the question often occurs to the mind — why did McFie insure only in this particular case, with this particular patroon, as set forth in his letter of 13th July, 1838 ? Does it not argue great consciousness that this cargo was in more than common danger ? I think the fact of his insuring of his own accord, enforces the conclusion drawn against by the jury. He had been imprudent, and would try to prevent possible evil. But the question of his liability turns upon the original imprudence. If he was ever liable, he remained so, as well after as before, with or without insuring. And the jury having so found, the Court feels constrained to respect the verdict, as a legitimate conclusion from the facts.
The motion is therefore dismissed.
Evans, Butler, Earle, JJ., concurred.
Gantt, J., dissented.